IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:09-cr-48-WHA |
| RICARDO RENDON | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the Court on a *Motion to Suppress* (Doc. 20, filed April 22, 2009) filed by Defendant Ricardo Rendon ("Defendant" or "Rendon"). The United States' filed its *Response to Defendant's Motion to Suppress* (Doc. 40, filed June 18, 2009). Finally, Rendon filed his *Response to Government's Response* (Doc. 29, filed May 12, 2009) and *Supplemental Memorandum to Motion to Suppress* (Doc. 40, filed June 18, 2009). An evidentiary hearing was conducted on June 30, 2009. After the evidentiary hearing and due consideration of briefs, arguments, and applicable law, the Magistrate Judge concludes the warrantless search passes Constitutional muster and recommends that the District Court **DENY** the motion to suppress.

### I. FACTUAL BACKGROUND AND MOTION TO SUPPRESS

On March 8, 2009, at approximately 4:07 p.m., Alabama State Trooper Henry Cox ("Trooper Cox") was on patrol on Interstate 65 near mile marker 161 in Montgomery County, Alabama. Trooper Cox stopped a 1999 Freightliner Tractor driven by Rendon to conduct a vehicle inspection. Trooper Cox testified that he is a certified commercial truck inspector

Page 1 of 14

and tries to conduct one to two commercial inspections during his shift.  Trooper Cox told Rendon that he would conduct a Level II inspection of the vehicle after learning that Rendon did not have a current annual inspection.  As requested, Rendon gave Trooper Cox his driver's license, registration, proof of liability insurance, and log book.  Rendon had a load of onions which had been loaded on March 6, 2009 in Pharr, Texas.  Trooper Cox conducted the Level II vehicle inspection and found several minor violations.  To complete the inspection report, Trooper Cox and Rendon sat inside the police car.  While sitting in the car, Trooper Cox asked Rendon about his various stops in Texas and noted several lengthy stops in southern Texas including Edinburg, Pharr, and Ganada.

After Trooper Cox completed the report and explained the violations to Rendon, Rendon signed the report and was given a copy along with the original documents he had provided to Trooper Cox.  Just as Rendon was about to get out of the car, Trooper Cox asked Rendon whether he had anything illegal in the truck.  Rendon said "no."  Trooper Cox asked for permission to search the truck tractor and trailer.  Rendon said he would prefer not because the last time it had been searched the officer damaged his truck and left it a mess. Cox assured Rendon he would not damage the truck or its contents and repeated his request for consent.  Trooper Cox told Rendon of his right to refuse, but stated that if Rendon did not give consent, Trooper Cox would call for a K-9 unit.  Rendon then signed the consent form. During this time, Trooper Chris Faulk ("Trooper Faulk") came to the scene.  After Trooper Cox explained the situation, Trooper Faulk called Corporal Charles Anderson ("Corporal

Anderson") and his K-9 partner, Luca, to come to the scene.  While waiting, Troopers Cox and Faulk climbed over the onion pallets, into the interior of the trailer, and did a cursory search.  During the search they noticed that the refrigeration unit had some new bolts.  Once Corporal Anderson and Luca came to the scene, Corporal Anderson also did a cursory interior inspection to view the refrigeration unit.  Next, Corporal Anderson deployed Luca around the exterior of the tractor and trailer to conduct an open air sniff.  Luca reacted to the exterior portion of the refrigeration unit to indicate the presence of illegal narcotics.

After the dog alert, Rendon was handcuffed and told he was being detained for further investigation.  Trooper Cox also read Rendon his Miranda rights.  Corporal Anderson and Trooper Cox returned to the refrigeration unit with a portable drill, and drilled a hole in the refrigeration unit.  After withdrawing the drill from the hole, the troopers saw a white powdery substance on the end of the drill bit.  Corporal Anderson placed a scope in the hole and saw kilogram sized packages of similar size to those used for narcotics trafficking.  The packages were filled with a white powdery substance which the troopers thought was cocaine.  Rendon was then placed under arrest.

On April 22, 2009, Rendon filed his motion to suppress wherein he asserts (1) he was detained longer than necessary to effectuate the purpose of the stop, (2) the consent to search the vehicle was not voluntarily given, (3) the search exceeded the scope of the alleged consent given, (4) the search of the yellow file folders, cell phone, and computer was illegal, and (5) the consent form was insufficient to apprise Rendon of his rights.  *See* Doc. 20, at p.

10-11.  The United States timely filed its response on May 4, 2009.  *See* Doc. 28.  In the response, the government concedes that the consent was not voluntary and therefore stated the only questions remaining before the Court are (1) whether there existed reasonable suspicion to detain Rendon and (2) whether there was probable cause to search the tractor and trailer without a valid search warrant.  *Id*. at p. 4.  Rendon filed a reply wherein he also argued that he did not concede that the original stop was legitimate, but stated there is an issue of selective enforcement against Hispanics which violates his rights under the Due Process clause of the Fifth Amendment and Equal Protection Clause of the Fourteenth Amendment.  *See* Doc. 29.  After a change in defense counsel, Rendon filed a supplement to his original motion to suppress where he appears to concede the original stop was legitimate as an inspection of the commercial vehicle.  *See* Doc. 40.  The supplement appears to narrow the scope of the argument to the reasonableness of the detention after the conclusion of the Level II inspection.  *Id*.  In the supplement, Rendon asserts he was unlawfully detained without reasonable suspicion.  *Id*.  Therefore the evidence obtained from the search and any subsequent statements should be suppressed.

At the suppression hearing on June 30, 2009, Trooper Cox and Defendant Rendon both testified.  In addition, several exhibits were presented including a video of the entire incident.  The pleadings, testimony, and exhibits were all considered in the Court's review of the suppression motion.

## II.   DISCUSSION AND ANALYSIS

Rendon seeks suppression under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.  Warrantless searches and seizures are per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted).  One such exception is enumerated in Ala. Code § 32-9A-3 which permits the administrative inspection of commercial vehicles without a warrant.[1][2]  Therefore, the Court finds that stop itself and the subsequent Level II inspection is permissible.

### A.   Selective Enforcement Claim

In the hearing, Rendon did not argue anything relating to an equal protection violation. However, in his reply Rendon claims his ethnicity improperly motivated Trooper Cox to search for grounds to search his vehicle, in violation of the Equal Protection Clause.  It is the

---

[1]      Ala. Code § 32-9A-3 provides in full:

Any records required to be maintained by operators of commercial motor vehicles pursuant to state or federal laws or regulations shall be open to inspection during the normal business hours of a carrier by members designated by the director. The inspection may be made without a warrant. Members of the department designated by the director may also go on the property of an operator of a commercial motor vehicle to conduct inspections of facilities and records to ensure compliance with applicable state and federal laws and regulations governing commercial motor vehicle operations.

The director may promulgate reasonable rules and regulations relating to this chapter subject to the Alabama Administrative Procedure Act.

[2]      Trooper Cox testified this was the sole basis for his stop as there were no traffic violations.

opinion of the Court that Rendon abandoned this argument; however, even if he did not, the Court rejects a suppression claim with regard to a selective enforcement claim. The Court specifically credits the testimony of Trooper Cox that his sole reason to stop Rendon was to conduct a commercial vehicle inspection which had nothing to do with Rendon's ethnicity.

In *Whren v. United States* the Supreme Court held "the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Thus, *Whren* requires this court look first for a reasonable basis for a traffic stop, and if found, an officer's subjective intentions are to be discarded. The facts demonstrate a valid basis for the stop in this case - i.e. the Alabama inspection statute - and there are no grounds to address Rendon's equal protection claim within this suppression proceeding.

**B.    Consent**

Rendon contends his consent was not lawful and cannot support the search of the tractor and trailer. The United States concedes that Rendon did not voluntarily consent to the search of either the tractor or the trailer. *See* Doc. 28 at p. 4. Consequently, the Court need not address consent. Moreover, Trooper Cox acknowledged in his testimony that the original purpose of his stop, that is the Level II inspection, had concluded and a copy of the inspection report had been given to Rendon. Thus, the Court turns to whether reasonable

suspicion existed to detain Rendon beyond the Level II inspection and whether there was probable cause to search the tractor and trailer.

## C.    Reasonable Suspicion & Probable Cause

Another warrantless search exception is the automobile exception wherein officers can search any container within an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005) (citing *California v. Acevedo*, 500 U.S. 565, 579-80, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) and *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003)).   No one disputes the vehicle driven by Rendon was operational, thus the inquiry is limited to whether there was probable cause to believe there was evidence of a crime. *See Watts*, 329 F.3d at 1286.  "Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

Even absent probable cause, a brief detention of a vehicle is reasonable within the meaning of the Fourth Amendment where it is conducted "in order to investigate a reasonable suspicion that such persons are involved in criminal activity." *United States v. Mikell*, 102 F.3d 470, 474 (11th Cir. 1996) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed. 889 (1968) and *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir.

1990)); *accord United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing

*Terry*).  To justify this intrusion, the reasonableness standard requires that the office "be able

to point to specific and articulable facts, which, when taken together with rational inferences

from those facts, reasonably warrant that intrusion."  *Mikell*, 102 F.3d at 474-75 (quoting

*Terry*, 392 U.S. at 21, 88 S.Ct. at 1880); *see also United States v. Powell*, 222 F.3d 913, 917

(11th Cir. 2000) (officer must have "a reasonable, articulable suspicion based on objective

facts that the person has engaged in, or is about to engage in, criminal activity.").  "The

officer must be able to articulate more than an inchoate and unparticularized suspicion or

hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S.Ct. 673, 676,

145 L.Ed.2d 570 (2000) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868) (internal quotations

omitted); *Powell*, 222 F.3d at 917.  Moreover, "[w]hile 'reasonable suspicion' is a less

demanding standard than probable cause and requires a showing considerably less than

preponderance of the evidence, the Fourth Amendment requires at least a minimal level of

objective justification for making the stop." *Wardlow*, 528 U.S. at 123, 120 S.Ct. at 675-76

(citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989));

*accord Diaz-Lizaraza*, 981 F.2d at 1220-21.  It may even be based on "commonsense

judgment and inferences about human behavior." *Wardlow*, 528 U.S. at 125, 120 S.Ct. at

676; *Powell*, 222 F.3d at 917 (quoting *Wardlow*).  In other words, "[t]he process does not

deal with hard certainties, but with probabilities.  Long before the law of probabilities was

articulated as such, practical people formulated certain common-sense conclusions about

human behavior; jurors as fact-finders are permitted to do the same - and so are law enforcement officers." *Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1585-86 (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *see also United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005) (reaffirming officer's duty to investigate where reasonable suspicion exists). Finally, the court must look to the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002).

Trooper Cox testified that his request to search the tractor and trailer was based upon his cumulative suspicions that criminal activity was afoot. Specifically, Trooper Cox testified that Rendon appeared nervous, refused to make eye contact, gave short answers, had contradictory answers, and had stops of unusual duration during his time in Texas that were not sufficiently explained. Moreover, Trooper Cox testified that based on his knowledge and experience, the locations of Rendon's stops - e.g. McAllen, TX, Pharr, TX, Ganada, TX, and Edinburg, TX - were known source cities for illegal narcotics. Rendon told Trooper Cox that he was the owner/operator of the truck. Trooper Cox knew that as owner/operator of the tractor and trailer, Rendon was paid by the number of miles driven. Trooper Cox testified that generally, owner/operators will take the most direct route to their destination and begin their journey immediately after receiving their loads. In addition, they will drive as long as they can before taking another break. Rendon did not do so, but instead, after receiving his load, drove for only four to five hours before taking a ten hour break in a source city even

though he was off-duty almost the whole day beforehand.  Additionally, Rendon did not know how many pallets he had on the load nor was he able to answer Trooper Cox's questions about his destination.  All of these facts caught Trooper Cox's attention and raised his suspicions.

Rendon disputes the existence of "reasonable suspicion" at this stage and views the continued detention as the turning point from a lawful stop to a Fourth Amendment violation which requires suppression.  However, his argument against reasonable suspicion does not override the combination of facts and information which Trooper Cox, a trained officer, used to make inferences and deductions "that might well elude an untrained person."  *United States v. Bautista-Silva*, 567 F.3d 1266, 1272 (11th Cir. 2009) (quoting *Arvizu*, 534 U.S. at 273, 122 S.Ct. at 750-51).  Further, the Eleventh Circuit also stated that a "divide-and-conquer" approach to factual analysis is inappropriate because "reasonable suspicion may exist even if each fact alone is susceptible of innocent explanation."  *Id*. at 1272-1273 (citations and internal quotations omitted).  Therefore, this Court concludes that based on the totality of the circumstances including Trooper Cox's judgment, the continued stop satisfies the requirements under *Terry* and its progeny.  Thus, it passes constitutional muster.[3]

Next, the Court turns to whether probable caused existed justifying the search of the

---

[3]    The Court also notes that as long as Trooper Cox was authorized to conduct the administrative inspection, no level of suspicion was required for him to request the canine unit during the course of that inspection.  *See United States v. Steed*, 548 F.3d 961, 975 n. 10 (11th Cir. 2008).  Therefore Trooper Cox could have requested a canine unit at this time.  That said, Trooper Cox testified that he did not call the canine unit until after he concluded the inspection and had developed reasonable suspicion of drug trafficking.

vehicle.  Trooper Cox testified that after the inspection had concluded he called for a drug sniffing canine.  While waiting, his partner Trooper Faulk arrived.  The two of them climbed in the interior of the trailer.  Neither trooper had valid consent to search, thus their search was unlawful.  At any rate, they did not find any illegal drugs during this search.  Corporal Anderson and his canine Luca came to the scene after Troopers Faulk and Cox finished their initial search.

The use of a drug sniffing canine during a lawful traffic stop, generally does not implicate legitimate privacy interests.  *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005).  Specifically, no consent is required for a well-trained narcotics-detection dog to sniff the exterior of a vehicle.  *Id*.  In other words, conducting a canine sniff is not considered a "search" for constitutional purposes and may be done without any particularized suspicion.  *Caballes*, 543 U.S. at 409-10, 125 S.Ct. at 838.  Moreover, once a canine alerts on a defendant's vehicle, officers have probable cause to conduct a full search of the car.  *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998); *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993); *see also United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003) (citing *Banks* for proposition that positive responses by drug dog establishes probable cause for search).

Corporal Anderson and Luca conducted an exterior sniff of the trailer and Luca gave a positive alert on the exterior of the refrigeration unit.  This independent search was not in any way reliant upon the earlier search conducted by Troopers Cox and Faulk.  From the

positive alert to narcotics by Luca, the troopers had an independent source of probable cause to search the vehicle. As such, the evidence seized from the trailer should not be suppressed as its discovery was not the result of any illegal police activity, but rather a lawful canine sniff. *See Segura v. United States*, 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984) (If police discovery the evidence from a source independent from the illegal conduct, the evidence need not be excluded); *United States v. Jackson*, 548 F.Supp.2d 1314, 1324 (M.D. Fla 2008); *see also United States v. Moore*, 329 F.3d 399, 404-05 (5th Cir. 2003) (upholding denial of motion to suppress evidence recovered from vehicle and noting that officers did not obtain evidence as a result of illegal arrest but rather through "independent source" of dog sniff); *United States v. Harris*, 175 F.3d 1017 (4th Cir. 1999) (upholding denial of motion to suppress drugs located in car after illegal seizure and holding that "canine sniff provided the requisite probable cause to obtain the search warrant and was an independent source from the illegal seizure of the vehicle."); *United States v. Bosby*, 675 F.2d 1174, 1181 (11th Cir.1982) (holding that detective's illegal search of briefcase did not taint subsequent search by FBI agent pursuant to valid search warrant when search warrant was based on information provided by defendants and did not contain any information obtained through first illegal search).

Finally, the length of the stop was not excessive in this instance. The Eleventh Circuit has upheld reasonable suspicion detentions significantly longer than this one. *See e.g., United States v. Gil*, 204 F.3d 1347, 1350-51 (11th Cir. 2000) (upholding

reasonable-suspicion detention for approximately 75 minutes); *United States v. Cooper*, 873 F.2d 269, 275 (11th Cir. 1989) (affirming a 35-minute reasonable-suspicion detention); *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (50 minute investigatory stop involving the use of a drug dog was not unreasonably long under the circumstances). However, like most courts, this Court is reluctant to adopt a completely formulaic approach to whether a stop is reasonable.  Instead, the Court will look to the totality of the circumstances to determine the amount of time Rendon was detained was necessary to effectuate the reasonable purposes of the stop.  In this case, the length of time – approximately 20 minutes – was not unreasonable to wait for Corporal Anderson and his narcotics-detection dog particularly in light of the reasonable suspicion held by Trooper Cox. Thus, the search of the trailer also passes constitutional muster and the evidence should not be suppressed.

**III.  CONCLUSION**

Pursuant to the foregoing findings and conclusions, it is the RECOMMENDATION of the Magistrate Judge that Defendant Rendon's *Motion to Suppress* (Doc. 20) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **July 22, 2009.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and,

therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 9th day of July, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE